[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1130
The plaintiff property owner brought this application pursuant to C.G.S. 49-35a to have this Court order the reduction or discharge of a mechanic's lien in the amount of $148,000 placed upon its property by the defendant lienor. It alleges that there is not probable cause to sustain the validity of such lien and that the lien is excessive.
The statute provides that upon the hearing of this application the lienor shall first be required to establish that there is probable cause to sustain the validity of the lien and any person entitled to notice may appear and be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or the amount of the lien claimed is excessive and should be reduced. C.G.S. 49-35b (a). Upon consideration of the facts, the Court may (1) deny the application if probable cause to sustain the validity of the lien is established; or (2) order the lien discharged (a) if probable cause to sustain its validity is not established or (b) by clear and convincing evidence its invalidity is established; or (3) reduce the amount of the lien if the amount is found to be excessive by clear and convincing evidence. C.G.S. 49-36b(b).
The evidence produced demonstrates that Domenic Pane, president of the defendant, a small, family-owned general contractor, was approached by Curtis Dunn, the facilities manager of the plaintiff, in early 2001 concerning the school building which the plaintiff owned at 569 Maple Avenue, Newington. The defendant had previously done several roofing repairs for the plaintiff and, on the day in question, was about to leave after making repairs on the roof of the wing then occupied as the school when Dunn approached and told Pane that the plaintiff would like to demolish the old 2-story structure but would like to have the equipment from the electrical boiler and heat pump rooms located in the basement removed. See Defendant's Exhibit 1. The defendant sent the plaintiff a letter dated April 4, 2001 as to that conversation. Plaintiff's ExhibitA, and billed the plaintiff for that recommendation in the amount of $3,000. The recommendation of the defendant for the demolition of the 2-story structure without an interruption of the school schedule was contained in a report dated April 23, 2001. Defendant's Exhibit 2. A request for an estimate of cost of the project to be done by the defendant, Defendant's Exhibit 3. was discussed by the defendant with Dunn and the pastor at the church facility on or about April 30, 2001. The estimated cost was $700,000 and 16 weeks to substantial completion before September 1, 2001. The plaintiff submitted to the defendant a letter of intent dated May 12, 2001 to enter into a written contract and provided the defendant to prepare for such work but the defendant must submit written receipts of expenses but not to exceed the initial deposit CT Page 1131 of $30,000 unless first seeking the approval of the plaintiff's facilities manager before acting in any other regard. Defendant's Exhibit4. The defendant started work immediately and planned weekly meetings. The first job meeting minutes of May 23, 2001 requested a contract by May 30, 2001, that additional funding was needed and the deposit would be gone by June 3, 2001. See Defendant's Exhibit 5. At the job meeting of May 30, 2001 Dunn was told that the deposit was used up, the abatement of hazardous materials was to be started on June 13, 2001 and demolition soon after. Funding for the abatement and demolition must be available before the work begins. See Defendant's Exhibit 6 and 7. Dunn responded that financing was being arranged. At the job meeting of June 6, 2001, the storage tank had been removed, MDC, SNET and CNG utilities had been disconnected and CLP scheduled for June 11. The gas pipe will be removed in the coming week and Bostwick and Hopper retained as code consultant. See Defendant's Exhibit 8 and 9. On June 13, 2001 job meeting the defendant told Dunn costs were being incurred and the abatement and demolition was held up by lack of additional funding. See Defendant'sExhibit 10. On June 20, 2001 the defendant was informed to stop work because funding was not available without a precise contract. SeeDefendant's Exhibit 12. By cross letters of June 25, 2001 by the defendant and July 3, 2001 by the plaintiff the work was stopped. SeeDefendant's Exhibits 13, 14 and 15. The defendant submitted the balance of the cost of the work performed by the defendant for the plaintiff.Defendant's Exhibit 16. The amount claimed was $148,000 after deducting the deposit of $30,000 and adding in $1,500, the unpaid portion of the fee for the feasibility report. The plaintiff has submitted invoices and payments totaling approximately $71,000 due to vendors or subcontractors on said project. See Defendant's Exhibits 17, 20, 22 and 23. Of this total he claims over $50,000 has been paid.
Dunn admitted that he had weekly job meetings with Pane and went to the site at least 3 or 4 times per week to observe the progress. He didn't ask Pane not to do any of the work that he testified he was doing and that he admitted that he had cleaned out the 2-story structure to the point where abatement and demolition could proceed. He denied that he had received the allocation as to the $30,000 deposit on May 29, 2001 nor at the job meeting of May 30, 2001. He stated that he received that allocation, Plaintiff's Exhibit B, at the June 6, 2001 job meeting and believed that there was still $2,500 left from the $30,000 deposit to pay for the gas pipe removal and the shutting off of the electricity. He never received a structural engineer's report nor reports or estimates of architect or subcontractors except for the estimate for Manafort's demolition. He did not receive written receipts for the allocations from the $30,000 deposit nor was he asked for approval to exceed the $30,000 deposit nor was such approval given. CT Page 1132
The defendant does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claims.Ledgebrook Condominium Assn., Inc. v. Lusk Corporation, 172 Conn. 577,584. "The legal issue of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." New England Land Co. Ltd. v.DeMarkey, 213 Conn. 612, 620. The defendant cannot establish a bona fide belief that would establish the expenditure of $27,500 of the $30,000 deposit on June 6, 201 escalated to $178,000 by June 20, 2001. Pane was limited to expenditures up to the $30,000 deposit. Without giving Dunn any receipted allocations, there cannot be belief sufficient for probable cause that he had received approval as required by the "letter of intent" dated May 12, 2001. Defendant's Exhibit 4. Although there need not be this expressed contract, there must be at least the consent of the owner so that there is an implied contract. Avery v. Smith, 96 Conn. 223, 227. The defendant has failed the proof of the same. Pane has tried to cover this issue with testimony that Dunn encouraged him to continue and that financing would be available. Except for a brief statement in the job meeting minutes of June 13, 2001 (Defendant's Exhibit 10) that "additional costs have been incurred" the previous two job meeting minutes stated that abatement and demolition was held up because funding was not available. The aggregation of all costs submitted by the defendant (Defendant's Exhibits 17, 20, 22 and 23) of $71,000 is more than $100,000 less than the bill (Defendant's Exhibit 16) submitted to the plaintiff of $176,000. Even the charges made only surfaced after the termination of the defendant's work on June 20, 2001 and become suspect when his son, Michael, received $11,500 for claimed work for periods not within the six (6) week period from the "letter of intent" dated May 12, 2001. The Court cannot therefore find that the defendant has sustained its burden to establish probable cause as to the validity of its lien.
For the above reasons the Court orders the lien discharged.
____________________ Corrigan, JTR